FILED
5/26/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
CP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. **1:21-CR-00345** |
| v. | Violations: Title 18, United States |
| TIMOTHY MAPES | Code, Sections 1623(a) and 1512(c)(2) |

JUDGE LEE
MAGISTRATE JUDGE FINNEGAN

## COUNT ONE

The SPECIAL JANUARY 2019 GRAND JURY charges:

1. At times material to this indictment:

    a. Public Official A was the Speaker of the Illinois House of Representatives and an elected member of that body from the 22nd District in Illinois. Public Official A was also the Chairperson of the Democratic Party of Illinois.

    b. Defendant TIMOTHY MAPES was Chief of Staff to Public Official A in Public Official A's capacity as Speaker of the Illinois House of Representatives. MAPES resigned as Chief of Staff on or about June 6, 2018. Prior to his resignation, MAPES also served as Chief Clerk of the Illinois House of Representatives and as Executive Director of the Democratic Party of Illinois.

    c. Individual B served as an elected member of the Illinois House of Representatives between in or around 1972 and in or around 1982. Individual B and Public Official A served together as elected members of the Illinois House of Representatives for a period of time. After Individual B left the Illinois House of Representatives, Individual B served as a lobbyist. Individual B retired as a lobbyist

in or around 2016 but continued to work as a consultant after that date until in or around 2019.

  d. The Special January 2019 Grand Jury was investigating possible violations of federal criminal law, including efforts by Public Official A, and efforts of Individual B on Public Official A's behalf, to obtain for others private jobs, contracts, and monetary payments, in order to influence and reward Public Official A in connection with Public Official A's role as Speaker of the Illinois House of Representatives.

  e. The following matters, among others, were material to the Special January 2019 Grand Jury's investigation:

- Whether Public Official A directed Individual B to perform sensitive tasks;

- Whether Public Official A directed Individual B to exercise Public Official A's power and authority;

- Whether Individual B assisted Public Official A with matters concerning the Illinois House of Representatives, its members, its lobbyists, or with the entities or individuals having pending matters before the Illinois House of Representatives;

- Whether Public Official A or Public Official A's staff sought Individual B's advice;

- Whether Individual B performed any work for Public Official A or received assignments from Public Official A between 2017 and 2019; and

- Whether Public Official A used Individual B as a means of communicating messages between 2017 and 2019.

  2. Between in or around 2017 and on or about June 6, 2018, while MAPES served as Chief of Staff to Public Official A, MAPES and Individual B communicated

with each other by email and by telephone about Public Official A and about matters involving the Illinois House of Representatives and its members. These communications included messages MAPES passed to Individual B from Public Official A and information Individual B passed to MAPES for use by Public Official A and Public Official A's staff. MAPES and Individual B also participated together in telephone conference calls with Public Official A and Public Official A's staff during this period.

3. MAPES and Individual B continued to communicate with each other between on or about June 6, 2018 and at least on or about March 29, 2019, after MAPES resigned as Public Official A's Chief of Staff. During these communications, Individual B informed MAPES about what Public Official A said in certain discussions Individual B described having with Public Official A. Individual B also described to MAPES assignments Individual B said Public Official A had given to Individual B to perform. Individual B also sought MAPES' advice about, among other things, matters related to Public Official A and the Illinois House of Representatives and its members that MAPES had handled prior to MAPES' resignation as Chief of Staff.

4. On or about February 12, 2021, MAPES was served with a grand jury subpoena to testify before the Special January 2019 Grand Jury.

5. On or about March 24, 2021, the Chief Judge of the United States District Court for the Northern District of Illinois entered an order pursuant to Title 18, United States Code, Section 6002 (the "Immunity Order") concerning MAPES'

appearance before the Special January 2019 Grand Jury. The Immunity Order provided, among other things, that (1) MAPES was not excused from testifying on the ground that the testimony or evidence required of him might tend to incriminate him; (2) MAPES had to proceed to the place where the Grand Jury was meeting and answer the questions asked of him without asserting his privilege against self-incrimination; and (3) that no testimony or evidence provided by MAPES under the Immunity Order (or any information directly or indirectly derived from such testimony and evidence) might be used against him in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the Immunity Order.

6. On or about March 31, 2021, MAPES appeared in person before the Chief Judge. The Chief Judge admonished MAPES that his truthful testimony was required under the Immunity Order.

7. On or about March 31, 2021, after appearing before the Chief Judge, MAPES proceeded to the place where the Special January 2019 Grand Jury was meeting. The foreperson of the Grand Jury administered the oath to MAPES, and MAPES swore to tell the truth in the testimony he was about to give before the Grand Jury. MAPES acknowledged before the Grand Jury that the Immunity Order required him to testify truthfully and that he could be prosecuted if he lied in the proceeding.

8. On or about March 31, 2021, at Chicago, in the Northern District of Illinois, Eastern Division,

TIMOTHY MAPES,

defendant herein, was placed under oath prior to testifying before the Special January 2019 Grand Jury, was advised that his testimony was subject to the penalties of perjury, and knowingly made false material declarations during his testimony by responding to questions as follows:

[1]     Q:     Okay. Did [Individual B], after he retired, kind of give you any insight into what his interactions with [Public Official A] were that you weren't privy to personally?

        A:     No, that wouldn't—that wouldn't happen.

*****

[2]     Q:     Okay. And [Individual B] didn't—wouldn't tell you what he was discussing with [Public Official A] or anything that he was doing on behalf of [Public Official A] in that '17, '18, and '19 timeframe?

        A:     No.

*****

[3]     Q:     Do you have any knowledge about whether or not [Individual B] performed any sort of tasks or assignments for [Public Official A] in [the] 2017 to 2018 timeframe at all?

        A.     I don't recall any.

*****

[4]     Q:     . . . Do you have any reason to think [Individual B] was acting as an agent for [Public Official A] after he retired in 2016, that is, doing work for him or carrying out assignments for him?

        A:     I'm not aware of any. I'm not aware of that activity. Let's put it that way.

5

*****

[5]     Q:     . . . [A]ll these questions are going to be for the 2017 through 2019 timeframe.

Do you recall anyone ever describing any work—anyone at all describing any work or assignments [Individual B] was performing on [Public Official A's] behalf?

A:     I don't recall that—that I would have been part of any of that dialogue. I don't know why I would be.

Q:     The answer is yes or no to that question. Do you recall?

A:     No, I don't recall any of that.

*****

[6]     Q:     . . . So one of the things we were trying to figure out, Mr. Mapes, is whether or not—kind of a key issue for us is whether or not [Individual B] acted as an agent for [Public Official A] in any respect, including that timeframe. We're talking about the 2017, 2018, 2019 timeframe. Are you aware of any facts that would help us understand whether or not, in fact, [Individual B] acted as an agent or performed work for [Public Official A] or took direction from [Public Official A] in that timeframe?

A:     I don't know who you would go to other than [Public Official A] and [Individual B]. [Public Official A], if he had people do things for him like I did things for him, was—didn't distribute information freely.

*****

[7]     Q:     Let's talk about 2017/2018 to the present, do you know [Individual B] to have acted in any capacity as a messenger for [Public Official A] to convey messages to and from him?

A:     I'm not aware of any.

6

WHEREAS, in truth and fact:

- MAPES knew that Individual B carried out work and assignments from and on behalf of Public Official A between 2017 and 2019;

- Individual B described to MAPES work and assignments from Public Official A between 2017 and 2019;

- MAPES knew that Individual B received messages from Public Official A and communicated messages on Public Official A's behalf between 2017 and 2019; and

- MAPES provided Individual B with messages communicated to MAPES by Public Official A, including messages concerning work and assignments Individual B was performing on behalf of Public Official A between 2017 and 2018.

In violation of Title 18, United States Code, Section 1623(a).

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. At times material to this indictment:

   a. Paragraphs 1 through 7 of Count One of this indictment are incorporated here.

   b. Public Official B was an elected member of the Illinois House of Representatives.

   c. Public Official C was an elected member of the Illinois House of Representatives.

   d. Commonwealth Edison Company ("ComEd"), with headquarters located in Chicago, delivered electricity to industrial, commercial, and residential customers across northern Illinois and was the largest utility company in the State.

   e. The Special January 2019 Grand Jury was investigating allegations Public Official A and Individual B sought to obtain for others private jobs, contracts, and monetary payments from ComEd, in order to influence and reward Public Official A in connection with Public Official A's role as Speaker of the Illinois House of Representatives.

   f. In or around 2018, Individual C was appointed as the Chief Executive Officer of ComEd.

2. On or about March 31, 2021, MAPES testified falsely before the Special January 2019 Grand Jury, in an attempt to obstruct, influence, and impede an official

proceeding. In substance, among other things, MAPES falsely testified about the following topics:

    a.    Whether Individual B told MAPES about Individual B's communications with Public Official A between 2017 and 2019;

    b.    Whether MAPES knew that Individual B carried out work and assignments from and on behalf of Public Official A between 2017 and 2019;

    c.    Whether MAPES knew that Individual B had taken or intended to take action on Public Official A's behalf between 2017 and 2019;

    d.    Whether Individual B told MAPES about Individual B's work assigned by and on behalf of Public Official A between 2017 and 2019;

    e.    Whether MAPES knew that Individual B received messages from Public Official A and communicated messages on Public Official A's behalf between 2017 and 2019;

    f.    Whether Individual B told MAPES about messages that Individual B received or communicated on Public Official A's behalf between 2017 and 2019;

    g.    Whether MAPES knew that Individual B communicated with Public Official B in 2018, including communications at the direction of Public Official A;

    h.    Whether Individual B told MAPES about Individual B's communications with Public Official B in 2018, including communications at the direction of Public Official A;

i. Whether MAPES knew that Individual B communicated with Public Official C in 2018, including communications at the direction of Public Official A;

j. Whether Individual B told MAPES about Individual B's communications with Public Official C in 2018, including communications at the direction of Public Official A;

k. Whether Public Official A gave any messages for MAPES to pass on to Individual B between 2017 and 2018;

l. Whether Individual B told MAPES about Individual B's communications with members of Public Official A's staff between 2017 and 2019;

m. Whether Individual B told MAPES about any work he did for clients after Individual B's retirement; and

n. Whether MAPES had any knowledge of Public Official A's impressions of Individual C.

3. On or about March 31, 2021, at Chicago, in the Northern District of Illinois, Eastern Division,

TIMOTHY MAPES,

defendant herein, attempted to corruptly obstruct, influence, and impede an official proceeding, namely, the federal grand jury investigation into efforts by Public Official A, and efforts of Individual B on Public Official A's behalf, to obtain for others private jobs, contracts, and monetary payments, in order to influence and reward Public Official A in connection with Public Official A's role as Speaker of the Illinois House

10

of Representatives, in that the testimony described in paragraph 2 of this Count was false;

In violation of Title 18, United States Code, Section 1512(c)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY