IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　Plaintiff,<br><br>v.<br><br>TIMOTHY MAPES,<br><br>　　Defendant. | No. 21 CR 345<br><br>Judge John F. Kness |

## ORDER

The government's consolidated motions in limine (Dkt. 64) are granted in part and denied in part. Defendant's motion in limine (Dkt. 67) to exclude the testimony of Gary Shapiro; motion in limine (Dkt. 68) to exclude the testimony of Frances Ward; motion in limine (Dkt. 69) to bar evidence regarding Defendant's conversations with others concerning his meeting with the FBI in 2019; and motion in limine (Dkt. 71) to bar evidence related to a land transfer are denied. See accompanying Statement for details.

## STATEMENT

I. **Government's motion to admit evidence concerning the subjects the government asked Defendant during his proffer-protected interview (Dkt. 64).**

On February 11, 2021, law enforcement interviewed Defendant in a proffer-protected interview about, among other things, the relationship between Michael J. Madigan and Michael McClain. The government seeks to elicit testimony in its case-in-chief from law enforcement witnesses about: (1) the reasons for law enforcement's request to interview Defendant; (2) the timing of the proffer; (3) the fact that Defendant was represented by counsel and signed a proffer letter; and (4) the subjects the government asked questions about during the proffer, for the purpose of establishing that Defendant was asked about the same topics during the proffer as he was six weeks later during his grand jury testimony. (Dkt. 64 at 4.)

According to the government, Defendant may try to defend the perjury charge by arguing that he did not act knowingly, as 18 U.S.C. § 1623 requires, because he was surprised by the grand jury questions about Madigan and McClain's relationship. (*Id.* at 4–5.) The subject matter of the proffer questions is thus relevant to negating this defense, the government contends, because it shows that Defendant was not

caught off-guard when he was compelled to testify before the grand jury and he had time to prepare his responses. (*Id.*) Admitting the subject matter of the questions is also permissible under the terms of the proffer letter because it states that "anything related to the government by you or your client during the proffer cannot and will be used against your client"; the letter, however, does not bar the use of information related to Defendant. (*Id.* at 5.) And the government does not intend to elicit evidence about the information or responses Defendant provided. (*Id.*) The government also maintains that the evidence should not be excluded under Rule 403 of the Federal Rules of Evidence because it is highly probative of Defendant's knowledge and ability to prepare for the grand jury testimony, and Defendant will not be unduly prejudiced because the government will not elicit evidence of Defendant's statements during the proffer interview. (*Id.* at 6–7.)

Defendant responds that the proffer letter bars introduction of this evidence. For example, the fact that Defendant was represented by counsel at the proffer, signed the proffer letter, and the timing of the proffer is all information related to the government or requires testimony about the fact that Defendant related information to the government. (Dkt. 75 at 4.) According to Defendant, even the questions asked by the government are irrelevant unless coupled with the information that Defendant related to the government at the proffer. (*Id.*) Defendant also contends that the evidence is inadmissible hearsay because the questions asked at the proffer are out-of-court statements that the government seeks to introduce for the truth. (*Id.* at 5.) Finally, the proffer evidence should be excluded under Rules 401 and 403 as irrelevant and unfairly prejudicial because the proffer letter discusses "allegations of criminal wrongdoing," which will invite the jury to speculate about what allegations Defendant was facing in February 2021, and the questions asked at the proffer did not provide notice to Defendant because they did not address whether McClain performed "tasks" or "assignments" for Madigan. (*Id.* at 6–8.)

Pretrial agreements, such as proffer agreements, "are interpreted according to principles of contract law." *United States v. $87,118.00 in U.S. Currency*, 95 F.3d 511, 516 (7th Cir. 1996). As with plea agreements, proffer agreements are "unique contracts and the ordinary contract principles are supplemented with a concern that the bargaining process not violate the defendant's rights to fundamental fairness under the Due Process Clause." *Id.* at 517 (quoting *United States v. Rourke*, 74 F.3d 802, 805 (7th Cir. 1996)). Courts thus must "hold the government to the literal terms of the agreement, as well as the most meticulous standards of both promise and performance to insure the integrity of the bargaining process involved in proffers." *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008) (cleaned up). In addition, hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Hearsay is defined as an out of court statement that a party offers "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Irrelevant evidence or evidence that's "probative value is substantially outweighed by a danger of . . . unfair prejudice" is also inadmissible. Fed. R. Evid. 401 and 403. Unfair prejudice occurs when evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes

its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (cleaned up).

Defendant's arguments against allowing the evidence identified above are unpersuasive. As to relevance, Defendant has suggested that he intends to advance a defense that he was surprised in the grand jury, was caught off-guard by the questioning, and thus that he did not knowingly testify falsely before the grand jury. Evidence suggesting that Defendant was interviewed mere weeks before his grand jury appearance, that he was asked questions on similar topics to those presented in the grand jury, and that he was represented by counsel in connection with that proffer all tend to show that Defendant had ample opportunity to consider the subject of his grand jury testimony. The jury will be free to reject this inference, of course, but a guarantee of success is not required for evidence to be considered relevant under Rule 401. Separately, Defendant's argument that his answers are necessary to make the proffer questions relevant fails to acknowledge the low bar for relevance. Defendant will be free, of course, to offer the answers he gave at his proffer interview if he so chooses, but those answers are not a prerequisite for the questions' relevance. Because the evidence is relevant, Defendant's Rule 402 objection fails.

Defendant contends that allowing testimony concerning the questions Defendant was asked during the proffer session would violate the terms of the proffer agreement. But that argument rests on a misreading of the proffer agreement. In short, all that the proffer agreement requires is that the government not use information "related *to the government* by you [counsel] or your client [Defendant] . . . ." (Dkt. 64-1) (emphasis added). Questions directed to Defendant by agents or government lawyers do not constitute information related "to the government." As to Defendant's argument (Dkt. 75 at 4) that the letter agreement itself (or, more accurately, Defendant's signature on the letter) and the existence of his counsel was information "related to the government" within the meaning of the proffer agreement, ignores that the letter itself refers to a future event: the proffer interview. In any event, the proffer agreement is better understood as preventing the use by the government of substantive information provided to the government, not the other way around.

A closer question is presented by Defendant's hearsay argument. At first blush, eliciting testimony showing that Defendant was in fact asked certain questions during the proffer interview might suggest that those questions are being offered to prove the truth of the questions themselves. Put another way, Defendant contends that the value of the testimony depends on whether the trial jury accepts that the questions to be described in this trial were in fact asked at the proffer interview. But although Defendant's argument is well presented, his position fails to account for both the language of Rule 801 and Seventh Circuit caselaw that addresses whether questions can be statements.

To be classified as hearsay, a "statement" that the declarant "does not make while testifying at the current trial or hearing" (in other words, an out of court statement) must also be offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). As the Seventh Circuit has explained, not all out of court words count as statements; rather, a "remark is a question [and thus not a statement under Rule 801] if it is 'designed to elicit information and a response.' " *United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020) (cleaned up). If the remark "is intended to assert information," it is "a statement rather than a question." *Id.*; *see also United States v. Thomas*, 453 F.3d 838, 845 (7th Cir. 2006). Under this framework, the questions Defendant was asked at his proffer interview were not "statements"; they were remarks designed to elicit information and a response. Merely because testimony might be offered to show that the proffer questions were in fact asked does not transform them into statements under Rule 801.

Finally, Defendant's objection under Rule 403 fails. Defendant speculates that the trial jury will ascribe criminality to him based on the existence of the proffer agreement, but such speculation is unwarranted. In the absence of evidence concerning Defendant's answers, there is no reason to assume that the jury will itself assume that Defendant engaged in criminal conduct. Even if there is some risk of prejudice, however, that risk is not unfair and does not substantially outweigh the probative value of the evidence. Accordingly, the government's motion (Dkt. 64) pertaining to Defendant's proffer interview is granted.[1]

## II. Defendant's motion in limine to bar the testimony of Gary Shapiro (Dkt. 67).

Defendant moves to bar the testimony of Gary Shapiro, a former United States Attorney and long-time First Assistant United States Attorney. (Dkt. 67.) The government seeks to elicit "Grand Jury 101" testimony—an overview of the grand jury process. (*Id.* at 1.) Defendant first argues that Shapiro's testimony should be excluded under Rule 401 of the Federal Rules of Evidence because a primer on grand juries is irrelevant to proving the elements of the perjury offense: that Defendant testified falsely under oath before a grand jury, that his testimony concerned a material matter, and that he knew the testimony was false. (*Id.* at 1–2.) Because Shapiro has not been identified as an expert and did not participate in the government's investigation of Defendant, Defendant also moves to exclude Shapiro's testimony under Rule 701(b) because it is comprised of legal opinions; 701(c) because the testimony goes beyond lay witness testimony as it requires specialized knowledge; and Rule 602 because Shapiro's opinions are speculation and not based on personal knowledge. (*Id.* at 2–4.) Finally, Defendant moves to exclude Shapiro's testimony under Rule 403 because the relevance (if any) is substantially outweighed by the

---

[1] The remainder of the Government's consolidated motions in limine (Dkt. 64) are denied without prejudice to the government raising any specific objections or issues at trial.

4

danger that the jury would unduly credit Shapiro because of his distinguished career in law. (*Id.* at 4–5.)

The government responds that Shapiro's "Grand Jury 101" testimony is relevant because it explains the grand jury process in a trial that involves perjury and obstruction before the grand jury. (Dkt. 76 at 16.) The government also notes that the Seventh Circuit has approved of providing jurors with similar information when presented in a jury instruction, and another judge in this District has permitted similar testimony in a perjury trial. (*Id.* at 15–16 (citing *United States v. Garcia*, 562 F.2d 411, 416–17 (7th Cir. 1977) and *United States v. Beena Patel*, No. 17-CR-297 (N.D. Ill. (Ellis, J.)).) Shapiro's testimony also should not be excluded under Rules 701 and 602, the government contends, because he will not render any opinions or conclusions during his testimony, his descriptions about the grand jury process are based on his personal experience, and his knowledge is not "specialized" as that term is used in Rule 701. (Dkt. 76 at 18–19.) Shapiro's testimony is also not unduly prejudicial under Rule 403 because he will not testify to any facts in Defendant's case; the jury will thus perceive him as a neutral witness providing helpful information on the grand jury. (*Id.* at 19–20.)

Lay witness testimony is inadmissible under Rule 701(b) if it is offering a legal conclusion, *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009), and it is inadmissible under Rule 701(c) if it provides "specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events," *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). Lay witness testimony may also be excluded under Rule 602 if it is not "grounded in observation or other first-hand personal experience." *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Finally, lay witness testimony may be excluded if its probative value is "substantially outweighed" by the danger of "unfair prejudice." Fed. R. Evid. 403.

Defendant's motion to exclude Shapiro from trial is denied. As to relevance, the proffered testimony has some tendency to affect the probability of a consequential fact: namely, whether Defendant lied to a grand jury in a material way. At trial, the jury will necessarily be exposed to evidence concerning grand jury proceedings. It is reasonable to surmise that trial jurors may be confused about the grand jury process in view of their service as trial jurors. Shapiro's testimony will seek to abate any such confusion. Moreover, a clearer understanding of the grand jury process may help the trial jury better to understand and follow its instructions at the end of trial.

Defendant argues that Shapiro's testimony is properly characterized as expert testimony under Rule 702 of the Federal Rules of Evidence. Although this question is closer than the issue of relevance, the determining factor is that Shapiro will not offer an opinion. It is true that Rule 702 speaks of testimony "in the form of an opinion *or otherwise*" (emphasis added), but the principal harm Rules 701 and 702 seek to avoid is having a witness provide an opinion based on specialized knowledge without

5

also having to meet the requirement of reliability. Shapiro's testimony is not for the purpose of providing an opinion, but instead to provide useful facts and context concerning the function of the grand jury. As to Defendant's objection under Rule 602, Shapiro's testimony, while not based on his personal knowledge of this case, will be based on his personal knowledge of the grand jury process.

Defendant also objects under Rule 403 and argues that Shapiro will be viewed with undue deference by the jury to the detriment of Defendant. It is, however, difficult to see how this could be so, given that Shapiro's testimony will pertain solely to the function of a grand jury—not to the alleged conduct of Defendant. In any event, any favor toward Shapiro based on his background would not be unfairly prejudicial, in part because Shapiro will not offer opinion testimony.

Although the Court's denies Defendant's motion in limine, the Court expressed concern at a pretrial conference that some of the topics of inquiry noted by the government in its response to the motion in limine could bleed into the realm of unqualified expert testimony. In response, the government represented that it would be careful to keep its questioning of Shapiro within permissible bounds. Defendant will be free to object if he feels that any questioning threatens to exceed those bounds.

### III. Defendant's motion in limine to bar testimony of Frances Ward and to exclude proposed government exhibits (Dkt. 68).

Defendant moves to bar the testimony of Frances Ward, the court reporter for Chief Judge Pallmeyer; introduction of an immunity order entered by Chief Judge Pallmeyer on March 24, 2021; and introduction of a transcript of proceedings before Chief Judge Pallmeyer on March 31, 2021. (Dkt. 68 at 1 n.1.)

According to Defendant, this evidence will alert the jury that Defendant invoked his Fifth Amendment right to silence. (*Id.* at 1.) Defendant argues that the government intends to use Defendant's invocation as substantive evidence of his guilt, which is prohibited by the Fifth Amendment. (*Id.*) Defendant proposes that evidence regarding the invocation and subsequent immunization should be barred unless Defendant opens the door by arguing that he was a willing, cooperative witness. (*Id.* at 3 (citing *United States v. Seltzer*, 794 F.2d 1114 (6th Cir. 1986)).) The evidence is also irrelevant under Rule 401, says Defendant, because whether he was testifying subject to immunity has no bearing on whether his grand jury testimony was false. (*Id.*) Defendant also contends that the evidence is inadmissible under Rule 403 because there is a significant danger that a juror would speculate why Defendant was immunized, what crime he must have committed to be given immunity, and why Defendant thought his testimony could incriminate him. (*Id.* at 4.) Finally, Defendant says the evidence would confuse the jury and waste time because it would require a mini-trial to explain to the jury why white-collar criminal defense lawyers routinely ask for immunity for their clients. (*Id.*)

6

The government responds that the jury will not learn about Defendant's invocation because the government has offered to redact the invocation from the immunity order and transcript, and Ward will testify only to authenticate the documents. (Dkt. 76 at 5–6.) Moreover, the invocation of the Fifth Amendment right to silence and immunization are not so tied together that the jury would infer Defendant invoked his right to silence from the immunity order. (*Id.* at 7.) Accordingly, the government maintains that Defendant's Fifth Amendment rights will not be violated. (*Id.*) Defendant's immunization is also relevant because, after being immunized, Chief Judge Pallmeyer admonished Defendant that he must testify truthfully, which underscores that Defendant's responses were part of a calculated effort to lie. (*Id.* at 10–11.) The immunization also shows that Defendant, by responding "I don't recall," was attempting to answer questions in a manner that he thought would be difficult to prove false. (*Id.* at 11.) Moreover, the government contends that, because the Fifth Amendment invocation will be redacted, the challenged evidence is not unduly prejudicial; Defendant's concern that the jury may speculate as to why he received immunity is thus overblown. (*Id.* at 12.) Finally, the government maintains that no mini-trial is necessary regarding general practices of white-collar criminal defense lawyers because the immunization evidence does not reference who asked for immunity or why. (*Id.* at 12–13.)

Defendant's motion to exclude this immunity evidence is denied. As an initial matter, Defendant's concern rests on flawed premise: that the mere mention of immunity will cause the jury, at great risk of prejudice to Defendant, both to assume that Defendant must have invoked his Fifth Amendment rights and to conclude that Defendant must be guilty because of that invocation.

It is well established that the Constitution prohibits the government from commenting on a defendant's invocation of his Fifth Amendment right to silence or offering the invocation as substantive evidence of guilt. *See Griffin v. California*, 380 U.S. 609, 613–14 (1965); *United States v. Robinson*, 485 U.S. 25, 34 (1988). But the context here is quite different and does not pose the same concern that *Griffin* and later cases sought to address. The government has represented that there will be no mention at trial (at least none prompted by the government) of Defendant's invocation of his privilege against self-incrimination. Nor will the government argue that Defendant's silence amounts to substantive evidence of guilt. That fact alone is sufficient to take this case out of the purview of *Griffin*.

Defendant seeks to extend *Griffin* beyond what the rule requires. To begin, Defendant's invocation does not relate to the present criminal charges. Defendant is now facing trial because he is accused of having testified falsely before the grand jury. That testimony was compelled under a grant of immunity, but the immunity Defendant received was for acts already completed; that is, nothing he said to the grand jury could have been used against him in a prosecution based on those past acts. *See United States v. Apfelbaum*, 445 U.S. 115, 130 (1980) (in prosecution for perjury following grant of immunity under § 6002, noting that "this is a perjury

7

prosecution and not any other kind of criminal prosecution."). As a result, even if there were mention of Defendant's invocation of his Fifth Amendment rights, it would relate only to the substance of what Defendant was asked about before the grand jury, not the present charges.

More broadly, Defendant presents a guilt-by-association concern: namely, that the jury will assume Defendant must be guilty of something, otherwise he would not have needed to be immunized before the grand jury. That prejudice-based argument must be considered, but it does not create a *Griffin* problem; there will no mention of Defendant's invocation or suggestion that his earlier invocation constitutes substantive evidence of guilt in *this* case. Finding a violation of *Griffin* based on an assumption that the jury will draw a negative and impermissible inference is both unnecessary and flawed. *See, e.g., Griffin,* 380 U.S. at 614-15 (explaining that "[w]hat the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another" and noting that "the inference of guilt [from a defendant's "failure" to testify] is not always so natural or irresistible[.]").[2]

Defendant's objections based on relevance and unfair prejudice also fail. Evidence showing that Defendant testified under a grant of immunity is relevant, as the government explains, to Defendant's knowledge that he testified falsely. More specifically, the government contends, among other things, that Defendant sought to testify while not offering damaging evidence against either Madigan or McClain. The trial jury may reject that inference, of course, but the evidence is relevant under Rule 401.

As to unfair prejudice, Defendant overstates the risk. Defendants in criminal cases often choose not to testify, but the risk that the jury might draw an impermissible inference is typically addressed through a standard instruction stating that a defendant has an absolute right not to testify and that the jury may not consider in any way the fact that the defendant did not testify. *See* Bauer Pattern Instructions 2.05 (2022 updates). That instruction has been proposed by the parties here and will almost certainly be provided to the trial jury if Defendant does not

---

[2] Both sides rely on *United States v. Seltzer* for support, but for different reasons. In *Seltzer*, the district judge initially expressed reluctance to allow the government to elicit evidence that the defendant testified before a grand jury under a grant of immunity. 794 F.2d at 1121. But the judge later ruled that the defendant opened the door to evidence concerning immunity by giving the impression during direct examination that he had been a cooperative witness before the grand jury. *Id.* That ruling was upheld by the Sixth Circuit on appeal. *Id.* at 1122-23. *Seltzer* does not compel a different result here. No details appear in the opinion as to why the district judge, at sidebar, believed that "it would be inappropriate for the jury to know" that the defendant testified under a grant of immunity. *Id.* at 1121. For its part, because the Sixth Circuit affirmed on the ground that the defendant opened the door to evidence of immunity, it was not required to consider whether the district judge's initial concerns were well founded.

8

testify. Should the instruction be given, it will reduce the risk of jurors speculating improperly as to why Defendant was immunized before the grand jury. To the extent Defendant believes that a further instruction is required, he may propose an additional instruction for consideration. To the extent Defendant chooses to testify at trial, he will have the opportunity to address the subject of his grand jury immunity.

For these reasons, Defendant's motion (Dkt. 68) to exclude evidence concerning his immunity order is denied.

IV. **Defendant's motion in limine to bar evidence regarding Defendant's conversations with others concerning his meeting with the FBI in 2019 (Dkt. 69).**

In early 2019, Defendant had coffee with two FBI agents in Springfield, Illinois. (Dkt. 69 at 1.) The FBI agents attempted to persuade Defendant to work as a confidential witness but Defendant declined the request. (*Id.*) Defendant prepared a memo about the encounter, which he subsequently produced to the government under a subpoena. (*Id.*) Defendant also talked to a handful of people about his FBI meeting and memo, including a few lawyers and McClain. (*Id.*) The government seeks to introduce at trial an excerpt of Defendant's grand jury testimony when he was asked questions concerning his discussions with others about the FBI meeting and the memo he prepared. (*Id.*)

Defendant argues that this evidence should be excluded as irrelevant under Rule 401 because Defendant is not charged with obstruction concerning the meeting, memo, or discussions he had with others. (*Id.* at 2.) The evidence also does not prove that Defendant closely coordinated with McClain and Madigan because there is no evidence Defendant knew they were targets of a federal investigation, and the investigations that ultimately resulted in the indictments of McClain and Madigan had no connection to the approach made by the FBI (according to Defendant, the government in this case has produced no evidence of the FBI meeting). (*Id.*) The evidence should also be excluded under Rule 403 as unduly prejudicial, cumulative of other evidence, and because introducing such evidence would require an unnecessary exploration of attorney-client privilege issues. (*Id.* at 1–2.)

The government responds that, although the substance of the FBI meeting is not significant, what Defendant did after that meeting demonstrates his loyalty to Madigan and McClain and his intentional effort to withhold information from the grand jury. (Dkt. 76 at 31.) For instance, in a recorded phone call after the meeting, Defendant told McClain that he discussed the FBI meeting with attorney Sheldon Zenner, who represented Madigan, and that he was calling McClain to "report[] back in." (*Id.* at 31–32.) The jury can thus infer that Defendant made these statements to McClain with the intent that McClain relay them to Madigan. (*Id.* at 32.) And, if Defendant intended McClain to be a messenger, it shows that Defendant was aware of the role McClain played with Madigan, which is relevant to whether Defendant

9

lied before the grand jury. (*Id.* at 33.) The call also shows that Defendant and McClain were closely coordinating their notes on investigations into Madigan in both the Northern and Central Districts of Illinois, which demonstrates Defendant's motive to lie before the grand jury. (*Id.* at 32–33.) Finally, the government says that no attorney-client privilege issues exist because Zenner never represented Defendant; the conversation between the two individuals thus could not have been privileged. (*Id.* at 33–34.)

Defendant's motion is denied. Although the jury need not accept the government's construction of the significance of the 2019 FBI meeting, it reasonably could do so. A reasonable jury could find that Defendant's actions following the meeting reflected his loyalty to Madigan and McClain, his intent to keep Madigan abreast of the government's investigation, and his resulting desire to obfuscate before the grand jury in this District. For these reasons, the proffered evidence is relevant under Rule 401.

Nor should the evidence of the 2019 FBI meeting be excluded under Rule 403. Although the evidence may be prejudicial, it would not unfairly appeal "to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise cause the jury to base its decision "on something other than the established propositions in the case." *Thompson*, 359 F.3d at 479 (cleaned up). By the same token, the proffered evidence would not be needlessly cumulative (among other things, it is not repetitive of similar anticipated evidence), especially in view of the fact that the government bears the burden of proof at trial. Finally, Defendant's argument concerning the potential of attorney-client privilege issues is unpersuasive. Defendant has presented no reason to believe either that he had an attorney-client relationship with Sheldon Zenner (as Defendant himself confirmed before the grand jury, see Dkt. 142 at 88-89) or that the communications at issue were made in confidence for the purpose of obtaining or receiving legal advice. *See United States v. Snyderi*, 2023 WL 4011163, at *4 (7th Cir. June 15, 2023). For these reasons, Defendant's motion in limine (Dkt. 69) is denied.

### V.  Defendant's motion in limine to bar evidence related to a land transfer regarding "Chinatown" property (Dkt. 71).

The government has identified witnesses who are expected to testify about their knowledge of a proposed land transfer bill concerning property in the "Chinatown" area of Chicago. (Dkt. 71 at 1.) The legislation was never passed. (*Id.*) The government has also indicated a desire to present to the jury a handful of questions and answers by Defendant in the grand jury about the proposed "Chinatown" legislation, where Defendant said that he did not recall having discussions about the legislation with McClain. (*Id.*) At the time of Defendant's testimony, the government was investigating Madigan and McClain's efforts to transfer the Chinatown parcel to facilitate a sale to a private developer that would, in exchange, hire Madigan's law firm for real estate tax work. (Dkt. 76 at 28.)

10

According to Defendant, the "Chinatown" legislation question and answer sequence would constructively amend the indictment because this portion of grand jury testimony was not the basis for his perjury indictment. (Dkt. 71 at 1–2.) Count One lists seven allegedly perjurious question and answer sequences, but the "Chinatown" sequence is not one of them. (*Id.* at 2.) Moreover, Count Two does not refer to the "Chinatown" legislation in any way. Defendant also contends that a statement McClain made on May 30, 2018 (see proposed GX17)—namely, "it's an assignment as you probably know"—is excludable hearsay. (*Id.* at 17.) Accordingly, Defendant moves the Court to bar evidence about these questions and answers, or, in the alternative, order the government to produce all grand jury argument and deliberation concerning the Defendant indictment to determine whether the "Chinatown" legislation was considered by the grand jury as part of its consideration of the Defendant's indictment. (*Id.* at 3.)

The government responds that the "Chinatown" episode was highly relevant to the perjury and obstruction charges alleged in the indictment. (Dkt. 76 at 28–31.) In a 2018 phone call while Defendant was still Madigan's Chief of Staff, McClain told Defendant that the Chinatown legislation was one of his "assignments." (*Id.* at 28.) Evidence regarding the "Chinatown" legislation therefore is, according to the government, relevant to the perjury charge because it shows that Defendant knew, or at least had reason to believe, that McClain did "assignments" for Madigan. (*Id.* at 29.) It is also relevant to the obstruction charge because it shows that Defendant intended to impede the grand jury's investigation when he testified that he first learned about the Chinatown parcel transfer in the newspaper and that he had not spoken to McClain about the property. (*Id.* at 30.)

A constructive amendment of an indictment occurs "when the evidence at trial 'goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury.'" *United States v. Phillips*, 745 F.3d 829, 832 (7th Cir. 2014) (quoting *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999)). But "not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments." *Id.* (cleaned up). Instead, the crime charged in the indictment "must be 'materially different or substantially altered at trial, so that it is impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Id.* (quoting *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002). Moreover, the introduction of "evidence that the defendant committed another crime should not be confused with constructive amendment of the indictment" because "[s]ome evidence of uncharged criminal conduct is admissible, for instance, to prove the defendant's knowledge and intent." *United States v. Hagerman*, 301 F. App'x 552, 559 (7th Cir. 2008).

Defendant's motion (Dkt. 71) to bar evidence related to the Chinatown property is denied. To begin, Defendant's constructive-amendment argument fails: contrary to Defendant's suggestion, the Chinatown property episode, although not specifically listed in Count One as one of Defendant's alleged false statements to the grand jury,

11

could be viewed by the trial jury as an example of a Madigan-to-McClain "assignment" of which Defendant was aware. Defendant's suggestion that the Chinatown episode had to be specifically listed in the indictment requires too much specificity for a criminal pleading. *See, e.g., Phillips*, 745 F.3d at 832. So too for the allegations in Count Two, which refer in broad terms to Defendant's alleged efforts to obstruct the work of the grand jury. If Defendant in fact believed that McClain was doing work ("assignments") for Madigan, then the trial jury could find that Defendant's testimony to the contrary was obstructive even though the Chinatown episode is not mentioned specifically in Count Two. *Id*. Moreover, evidence concerning the Chinatown episode pertains directly to Defendant's knowledge of the alleged falsity of his testimony. As a result, Defendant's constructive amendment argument, as well as his related request to view the transcript of the grand jury's argument and deliberation stage, fails.

Defendant's hearsay objection is more facially persuasive, but it too fails on closer examination. As the government notes (Dkt. 76 at 34-36), out of court statements are not hearsay unless a party offers the statement in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). McClain's statement to Defendant will be offered to show Defendant's knowledge and belief concerning McClain's work on behalf of Madigan, not to show that the matter asserted in the statement—that the Chinatown legislation was "an assignment" given to McClain—was literally true. Put another way, it is immaterial whether McClain had actually been given the assignment; Defendant's knowledge is at issue, not the accuracy of McClain's task list. For these reasons, Defendant's motion (Dkt. 71) to bar evidence related to the Chinatown property is denied.

SO ORDERED in No. 21 CR 345.

Date: August 6, 2023

                                                            JOHN F. KNESS
                                                           United States District Judge