IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TIMOTHY MAPES, <br><br> Defendant. | No. 21 CR 345 <br><br> Judge John F. Kness |

ORDER

Defendant Timothy Mapes's motion for judgment of acquittal or, alternatively, a new trial (Dkt. 133) is denied. See accompanying Statement for details. The Clerk is directed to terminate the motions pending at Dockets 65, 66, 78, 80, 101, 116, 117, and 118, as those matters were addressed either during the pretrial conference or at trial. The motions filed at Dockets 31 and 97 are dismissed as moot. The motion filed at Docket 70 is dismissed as duplicative of Docket 69, and the motion filed at Docket 79 is dismissed as duplicative of Docket 78.

STATEMENT

On August 24, 2023, Defendant Timothy Mapes was found guilty of perjury and obstruction of justice. (Dkts. 124, 125.) Mapes now seeks either a judgment of acquittal or a new trial. (Dkt. 133.) As explained below, however, because the evidence at trial was sufficient to sustain a finding of guilt at trial, and because justice does not require a new trial, Mapes's motion is denied.

I.  Background

On May 26, 2021, Mapes was indicted on two counts: perjury in violation of 18 U.S.C. § 1623(a) and obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). (Dkt. 1.) These charges arose from the answers Mapes gave while testifying under oath before a Special Grand Jury in January 2019. (*Id.*) Following a jury trial, on August 24, 2023, Mapes was found guilty of both counts. (Dkt. 124, 125.)

## II.     Motion for Acquittal

Mapes argues that the evidence at trial was insufficient to sustain his conviction. (*See* Dkt. 133 at 1.) As a practical matter, this argument has already been addressed and rejected: "[T]here [was] sufficient evidence that a reasonable jury certainly could find beyond a reasonable doubt that Mr. Mapes did commit perjury and did engage in obstruction . . . . [;] enough for a reasonable jury to make those findings in favor of guilt." Tr. 1660:23–61:4. Mapes brings the argument again, focusing on the materiality of his lies and the ambiguity of the questions to which he responded with those lies.

### A.     Legal Standard

A court reviews a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure by asking "whether, after viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014); *see also United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989). This high bar presents "a nearly insurmountable hurdle." *Torres-Chavez*, 744 F.3d at 993.

### B.     Discussion

Mapes raises two main arguments for his motion for judgment of acquittal: first, that his lies were not material to the Grand Jury's investigation; and second, that the questions asked were fundamentally ambiguous and that some of his answers were literally true. On either of these grounds, Mapes argues, much of the indictment should have been dismissed as a matter of law. But because his lies were material, and because the questions asked were not impermissibly ambiguous nor his responses were literally true, Mapes's arguments fail.

#### 1.     Materiality

Mapes argues that his lies were not material to the Grand Jury's investigation and therefore cannot sustain a conviction for perjury. (Dkt. 133 at 4.) Mapes argues that the lies he made to the Grand Jury pertained to wholly legal activity, and because the Grand Jury was investigating alleged illegal activity by Michael Madigan and Michael McClain, those lies were immaterial to the Grand Jury's investigation. (*Id.*) But "false testimony is material if it relates to any subsidiary issue properly under consideration by the grand jury even though it may not be directly connected to the primary subject of investigation." *United States v. Wesson*, 478 F.2d 1180, 1181 (7th Cir. 1973).

The relationship between Madigan and McClain was one such material issue. FBI Special Agent O'Leary testified that "the communication between Mr. McClain—Mr. Madigan and his inner circle was extremely important to us," and Mapes was a member of Madigan's "tight inner circle." Tr. 425:4–6; 427:7–10. Mapes's argument that "the government offered no evidence that Mr. Mapes knew anything about criminality between McClain and Madigan . . . [or] to connect the legal 'tasks' and 'assignments' that McClain discussed with Mr. Mapes to the bribery allegations concerning Madigan and McClain" (Dkt. 133 at 2–3), thus falls short of showing that Mapes's lies were immaterial. Whether McClain worked closely with Madigan on any tasks—legal or illegal—was material in the investigation of whether McClain acted at Madigan's direction.

Further, the relevant investigation concerning Madigan, McClain, and others related to several other alleged offenses, including racketeering conspiracy, honest services fraud, attempted extortion, and use of a facility to promote racketeering. (Dkt. 137 at 1.) Mapes's false testimony was material to each of those counts. In any event, materiality was an element only of the perjury count, not the obstruction of justice count. Accordingly, Mapes is not entitled to a judgment of acquittal based on the immateriality of his statements.

### 2. Substance of the Questions and Answers before the Grand Jury

Mapes renews his pretrial motion to dismiss (Dkt. 33), arguing that four of the questions to which Mapes's answers were found to be false were fundamentally ambiguous and two of his answers literally true. The Court previously denied this motion. (*See* Dkt. 90.) Mapes's argument is not substantially different from his earlier argument, and the Court's analysis remains the same. The questions asked were not fundamentally ambiguous, given they were capable of reasonable comprehension by Mapes at the time they were asked.

Separately, Mapes's answers of "I don't recall" need not, as a matter of law, be deemed to be literally true. Whether Mapes answered truthfully when he said he did not recall certain matters was a factual question for the jury, and the jury found against Mapes. Mapes is not entitled to a judgment of acquittal on that basis.

\*         \*         \*

The evidence presented at trial, viewed in the light most favorable to the government, was sufficient for a rational trier of fact to conclude that the elements of the charged crimes were proven beyond a reasonable doubt. Mapes's motion for judgment of acquittal is therefore denied.

### III. Motion for New Trial

Mapes also argues that he is entitled to a new trial because purported judicial errors before and during trial were sufficiently prejudicial as to affect the jury's verdict. (Dkt. 133 at 18.)

#### A. Legal Standard

A new trial is warranted "if the interest of justice so requires." Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013). A new trial is in the interest of justice when "the substantial rights of the defendant have been jeopardized by errors or admissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). A trial court has substantial discretion to grant a new trial because it "heard all the evidence [and] watched both the witnesses and the jury," *Van Eyl*, 468 F.3d at 438, but a "jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quotation marks and citation omitted).

#### B. Discussion

##### 1. Evidence of Immunity

Mapes argues that it was error for the Court to allow the jury to see and consider evidence of Mapes's immunity on relevance and prejudice grounds. (Dkt. 133 at 18.) The Court considered this argument before trial and rejected it (*see* Dkt. 102 at 4–8); that analysis has not changed. Such evidence is relevant because it has at least some tendency to make more probable the fact that Mapes knew that his statements to the Grand Jury were false. The evidence of Mapes's immunity makes clear that Mapes was on notice that he would be answering questions concerning the relationship between Madigan and McClain; it tends to show that he had the opportunity to prepare for questions on that topic. Rule 401 of the Federal Rules of Evidence sets a low bar for relevance. *United States v. Hanzeh*, 986 F.3d 1048, 1052 (7th Cir. 2021). That bar is met here.

Admission of evidence of Mapes's immunity was also not unfairly prejudicial under Rule 403. The Government did not make any mention at trial of whether Mapes invoked his Fifth Amendment privilege. And, as the Court previously held, Mapes's contention that the jury must have inferred from this evidence that Mapes was guilty of *something* is overstated. *See, e.g.*, *Griffin v. California*, 380 U.S. 609, 614–15 (1965); (Dkt. 102 at 7–8.)

4

### 2. Testimony by Gary Shapiro

Mapes next argues that the Court erred in allowing testimony by former United States Attorney Gary Shapiro. (Dkt. 13 at 20.) The Court considered and rejected this argument before trial. (*See* Dkt. 102 at 4–6.) Mr. Shapiro testified about the generalities of the grand jury process based on his own personal knowledge; he did not testify as to the specifics of the grand jury proceeding leading to this case nor did he draw any conclusions specific to this case. Tr. 333:16–49:21. Mr. Shapiro therefore did not testify as an expert. *See* Fed. R. Evid. 7012. And his testimony was helpful to trial jurors who may have been confused regarding the differences between the grand jury and trial processes. Finally, that Mr. Shapiro had been retired, and therefore in essence removed from grand jury proceedings, for a decade did not render his testimony irrelevant because there was no evidence or suggestion at trial that the grand jury process had substantially changed over that period.

### 3. Evidence of Mapes's Proffer

Mapes argues that the Court erred in admitting a portion of a proffer-protected interview law enforcement conducted with Mapes in February 2021. (Dkt. 133 at 22.) Specifically, the Court admitted into evidence the questions Mapes was asked during that interview. Mapes made this argument before trial, and the Court rejected it. (*See* Dkt. 64 at 4; *see* Dkt. 102 at 1–4.) This evidence is relevant because it tends to show that Mapes was on notice of the basis of the questions he would be asked in the grand jury proceeding.

Separately, that evidence was not hearsay because questions are not statements under Rule 801 of the Federal Rules of Evidence. *See United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020). Mapes argues that admitting these questions violates the terms of the proffer. But the proffer only precluded the Government from using statements made by Mapes, not the Government itself, so use of the questions did not violate the terms of the proffer. (Dkt. 64-1. at 2.)

Mapes also argues that allowing the questions into evidence, but not Mapes's answers, was unfair. According to Mapes, if Mapes had answered the proffer questions with "I don't know" or "I can't recall," "[h]is answer would have been the same" in front of the Grand Jury. (Dkt. 133 at 26.) The Court construes this argument, referencing as it does the complaint of unfairness, as arising under Rule 403. The proffer questions carried significant probative value, given that Mapes suggested that he intended to argue that he was surprised by and unprepared to answer the questions asked at the grand jury proceeding. (*See* Dkt. 102 at 3.) Unfair prejudice occurs when evidence "may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (cleaned up). In the Court's view, the risk of unfair prejudice posed by admitting the proffer questions without their answers does not

"substantially outweigh[]" the probative value of those questions, Fed. R. Evid. 403, so admission of the questions alone was proper.

### 4. Chinatown legislation

Mapes next renews the arguments he made pretrial concerning the inadmissibility of evidence concerning Chinatown legislation. (Dkt. 133 at 27; *see* Dkt. 71 at 1–2.) The Court previously considered and rejected these arguments. (Dkt. 102 at 10–12.)

Mapes first argues that evidence regarding the Chinatown legislation should have been deemed inadmissible because neither charge against Mapes referred to it. (Dkt. 133 at 27.) According to Mapes, admitting such evidence, then, constructively amended the indictment. (*Id.* at 28.) But Mapes's knowledge of McClain's involvement with the Chinatown legislation could have constituted an "assignment" that McClain undertook at Madigan's behest of which Mapes had personal knowledge.

McClain's statement to Mapes that Madigan assigned McClain to transfer the Chinatown property was not hearsay. The government did not offer the statement to prove the truth of the matter asserted, namely, that Madigan assigned McClain with the task. Rather, it was offered to prove the fact that Mapes knew of the assignment and therefore lied when he said he did not know or could not recall anything about McClain's assignments.

### 5. Evidence from outside the charged period

Mapes next argues that the Court erred by admitting evidence from outside the charged period. (Dkt. 133 at 29.) Mapes contends that such evidence was irrelevant and minimally probative but carried the strong potential of causing undue prejudice to Mapes. (*Id.*)

The Government argues, and the Court agrees, that the evidence offered from outside the charged period was substantially relevant to the relationship between Mapes and McClain. (Dkt. 134 at 32.) Although such evidence may not be highly probative as to whether McClain performed any tasks at Madigan's direction during the charged period, it is probative as to whether Mapes would have known if McClain performed any such tasks. Mapes's knowledge is the basis of the charge and the conviction, so evidence that tends to show the tightness of Madigan's inner circle, even outside the charged period, is relevant.

### 6. Wiretap evidence

Mapes argues that it was error to admit wiretap recordings because they constituted hearsay. (Dkt. 133 at 30.) Mapes identifies three exhibits that, he argues, should not have been admitted: Exhibits 12, 63, and 74.

#### a. Exhibit 12

Exhibit 12 was a recording of a phone call between McClain and Bob Rita discussing gaming legislation. There are two pertinent excerpts from this recording that go to admissibility. First, Rita asked McClain if McClain "thought we should give the language [of the draft legislation] to folks." McClain responded, "I think you give it to Mapes first, isn't that the protocol[?]" Mapes argues that this is hearsay: an out of court statement taken to prove the truth of the matter asserted, namely, that it was "protocol" for such issues to go through Mapes. (*Id.* at 31.) To show that the Government intended to offer this evidence for its truth, Mapes highlights the Government's questioning of Rita about this exchange:

> Q: Mr. McClain tells you: I'd give it to Mapes first, right? Isn't that protocol? What did you understand him to be advising you to do in that portion of the call?

(*Id.*) Mapes argues that the Government's questioning regarding McClain's statement on the wiretap recording makes clear that the Government intended to use McClain's statement to prove Mapes's knowledge of the pending legislation; as such, Mapes argues, the statement is inadmissible hearsay. (Dkt. 133 at 31–32.) The Government counters that McClain's statement is admissible because it was "a direction or piece of advice that McClain was offering Rita, not a factual assertion." (Dkt. 134 at 35.)

Separately, the Government premises admissibility of the recording on another of McClain's statements: McClain told Rita, "let me check with Mapes." The Government argues that this statement is an exception to the rule against hearsay as a statement of intention or plan. (Dkt. 134 at 34); *See* Fed. R. Evid. 803(3). Mapes did not object to Rita's testimony on this matter. (Tr. 290–91.)

The Court agrees with the Government. The recording was admissible because neither of McClain's statements were offered to prove the truth of the matter asserted. The first statement offered advice to Rita, and the second statement explained McClain's intent. Exhibit 12 was therefore not inadmissible hearsay.

7

### b. Exhibit 63

Exhibit 63 was a recording of a conversation between McClain and Lou Lang in which McClain told Lang that McClain was acting on Madigan's behalf. (*See* Tr. at 1049.) Mapes argues that the Government sought to offer this evidence to prove the truth of McClain's assertion that he was Madigan's agent. (Dkt. 133 at 32.) The Government argues first that the statement proves not that McClain was Madigan's agent, but rather that McClain openly shared with others that he was. (Dkt. 134 at 36.) The Government also argues that the statement is admissible to prove the effect on Lang, the listener. (*Id.*)

During trial, the Court held that Exhibit 63 was admissible because it was "offered to show the effect on Mr. Lang, which goes to the larger issue of Mr. McClain's centrality, if you will, to the political operation." (Tr. 980:2–4.) Mapes has presented no new argument to alter that holding, so the Court declines to do so. In the Court's view, admitting Exhibit 63 into evidence was proper.

### c. Exhibit 74

Exhibit 74 is a recording of a conference call involving Madigan, McClain, and others. (*See* Tr. at 1180.) The portion of the conference call captured in the Exhibit concerned committee assignments. Mapes argues that Exhibit 74 was inadmissible hearsay because it was offered to prove the truth of the matter asserted, namely, that McClain was involved in conversations regarding committee assignments. (Dkt. 133 at 33.) Mapes argues that, when the Government invoked Exhibit 75, a recording of a call between McClain and Mapes in which McClain told Mapes about the earlier conference call, in its closing argument, telling the jury, "McClain is describing to [Mapes] what Speaker Madigan did in a meeting for all the requests," (Tr. at 1748:13–15), the Government was explicitly using Exhibit 74 to prove the truth of the matter asserted. (Dkt. 133 at 33.)

In admitting Exhibit 74, the Court found that the exhibit was not hearsay because it was not offered to prove the truth of the matter asserted. (Tr. at 958:5–62:5.) Rather, the recording was offered to prove "the people who were present [on the call], what Mr. McClain said at the time and his references to a proposal, in effect, for what he could do for Speaker Madigan." (Tr. 960:14–17.) In the Court's view, admitting Exhibit 74 was proper.

### 7. Mapes's FBI Meeting

Mapes next argues that the Court erred in admitting evidence concerning a meeting between Mapes and FBI agents in January 2019. (Dkt. 133 at 34.) This evidence included a memo that Mapes prepared and conversations that Mapes had with others after the meeting. (*Id.*) Before trial, the Court held that this evidence was

8

admissible because "[a] reasonable jury could find that [Mapes's] actions following the meeting reflected his loyalty to Madigan and McClain, his intent to keep Madigan abreast of the government's investigation, and his resulting desire to obfuscate before the grand jury in this District." (Dkt. 102 at 10.) That holding stands.

### 8. Refreshing Recollection

Mapes's final contention is that the Court erred in not allowing Mapes to present evidence that other witnesses were given the opportunity to review documents and listen to tapes in order to refresh their recollection before testifying. (Dkt. 133 at 35.) The Court disallowed this evidence at several points during trial. (*See, e.g.*, Tr. 142, 1645–46.) Mapes argues that this restriction prejudiced his defense. (*Id.*)

At the outset, Mapes mischaracterizes the Court's ruling. Mapes was allowed to—and did—ask witnesses about documents they reviewed before testifying. (*See, e.g.*, Tr. at 938:17–39:8 (defense counsel questioning government witness Will Cousineau: "in preparation for testifying here today, you've reviewed documents? . . . Fair to say that reviewing documents helped you to remember things that happened years ago?").) And Mapes was allowed to make an argument based on the testimony of his expert witness regarding the fallibility of memory. (Tr. at 1646:7–15.) But the Court also held that "[w]hatever somebody else as an individual may have remembered or not remembered because they may or may not have been shown documents is not relevant or not very relevant. . . . And it seeks to draw an improper linkage from one individual to Mr. Mapes." (Tr. at 1645:19–24.) The Court disagrees that limiting such evidence was error.

\*             \*             \*

The Court disagrees with each of Mapes's arguments attempting to establish error during his trial. As such, the Court holds that Mapes's "substantial rights" were not "jeopardized by errors or admissions during trial." *Kuzniar*, 881 F.2d at 470. Even if the Court did err, justice does not require that Mapes be given a new trial. Mapes's motion for new trial is accordingly denied.

## IV. Conclusion

For the foregoing reasons, Mapes's motion for judgment of acquittal or, alternatively, a new trial (Dkt. 133), is denied.

SO ORDERED in No. 21 CR 345.

Date: February 9, 2024

                                        JOHN F. KNESS
                                        United States District Judge